**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **BROADCOM INC.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**IXN SOLUTIONS LLC and NCMS, INC.,**<br><br>**Defendants.** | Case No. 26-cv-6389<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF BROADCOM INC.'S ORIGINAL COMPLAINT

Plaintiff Broadcom Inc. ("Broadcom" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants IXN Solutions LLC ("IXN") and NCMS, Inc. ("NCMS") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action arising out of Defendants' false and defamatory statements about Broadcom's ownership, corporate heritage, and business practices made at the NCMS 62nd Annual National Training Seminar in Atlanta, Georgia, during the week of June 8, 2026.

2. Defendants publicly and falsely told an audience of more than 1,700 government and industry security professionals—including representatives of the Defense Counterintelligence & Security Agency ("DCSA"), the National Security Agency ("NSA"), and other Department of Defense components—that Broadcom is "54% Chinese owned," is a "foreign company" that "inserted [itself] in [the U.S. government's] supply chain," deliberately bypassed the Committee on Foreign Investment in the United States ("CFIUS") through redomiciliation, and is "the adversary" in the context of Chinese espionage. Every one of these statements is demonstrably

false.

3. Broadcom is a Delaware corporation headquartered in Palo Alto, California, publicly traded on NASDAQ (ticker: AVGO), with more than six decades of American technology roots. Broadcom maintains a cleared subsidiary, Broadcom Government Solutions LLC, supporting Department of Defense and Intelligence Community contracts, and is a founding alliance member of the Cybersecurity and Infrastructure Security Agency("CISA") Joint Cyber Defense Collaborative ("JCDC").

4. Defendants' false statements were made to an audience comprising the very agencies responsible for overseeing Broadcom's facility clearance, government contracts, and supply-chain relationships. These statements have caused and continue to cause irreparable harm to Broadcom's reputation, business relationships, and economic interests.

## THE PARTIES

**Plaintiff Broadcom Inc.**

5. Broadcom, a Delaware corporation headquartered in Palo Alto, California, is a global technology leader that designs, develops, and supplies semiconductor and infrastructure software solutions. Broadcom's semiconductor business traces to a 1961 Hewlett-Packard division in Palo Alto, California. Its infrastructure software business incorporates companies with U.S. origins dating to 1960, 1976, 1981, 1982, 1991, and 1995. Its enterprise security business (the Symantec brand) was established in 1982 in Silicon Valley, California. Broadcom maintains a cleared subsidiary, Broadcom Government Solutions LLC, with cleared personnel supporting Department of Defense and Intelligence Community contracts.

**Defendant IXN Solutions LLC**

6. Defendant IXN Solutions LLC ("IXN") is a Texas limited liability company with

its principal place of business at 553 Tobacco Pass, New Braunfels, Texas 78132. IXN advertises itself as a provider of counterintelligence and supply-chain security consulting services.

7. IXN's principals include Jeremy Clark (CEO & Co-Founder), Joe Sheridan (COO), and Ryan Rambo (President, Commercial Offerings). Clark, Sheridan, and Rambo presented the defamatory "Supply Chain Counterintelligence" session at the NCMS 62nd Annual National Training Seminar.

**Defendant NCMS, Inc.**

8. Defendant NCMS, Inc. ("NCMS"), also known as The Society of Industrial Security Professionals, is a corporation with its principal offices located at 994 Old Eagle School Rd., Suite 1019, Wayne, Pennsylvania 19087. NCMS organized and hosted the 62nd Annual National Training Seminar in Atlanta, Georgia, during the week of June 8, 2026.

9. NCMS selected, invited, and contracted with IXN—a Texas-based firm—to present the "Supply Chain Counterintelligence: Protecting the DIB from Compromise" breakout session at the Seminar.

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Plaintiff Broadcom Inc. is a citizen of Delaware (state of incorporation) and California (principal place of business). Defendant IXN Solutions LLC is a citizen of the state(s) of citizenship of its members. Defendant NCMS, Inc. is a citizen of Pennsylvania, the state where it has its principal place of business.

**Personal Jurisdiction**

12. This Court has personal jurisdiction over Defendant IXN because IXN is a Texas limited liability company organized under the laws of the State of Texas, with its principal place of business in New Braunfels, Texas, within this judicial district. IXN is domiciled in Texas, conducts ongoing business operations in Texas, and conceived, prepared, and coordinated the defamatory presentation at issue from its Texas offices.

13. This Court has personal jurisdiction over Defendant NCMS. NCMS has purposefully availed itself of the privilege of conducting activities within the State of Texas and has established minimum contacts with this forum sufficient to satisfy the requirements of due process. NCMS's Texas contacts were not fortuitous but arose from deliberate, sustained, and claim-related conduct directed at the State of Texas, including the following:

a. **Texas Chapter Activity.** NCMS has maintained an active Dallas/Fort Worth Chapter since at least 2013. The DFW Chapter actively recruits Texas-based industrial security professionals and encourages Texas members to attend NCMS's annual national training seminar.

b. **Active Marketing to Texas Members.** NCMS actively marketed and promoted the June 2026 Atlanta seminar to its Texas-based membership, including through the DFW Chapter, soliciting their attendance and registration fees. NCMS actively does business in Texas. Indeed, NCMS's next annual seminar is being held in Dallas, Texas in June 2027.

c. **Deliberate Contracting with a Texas Firm.** NCMS purposefully selected and contracted with IXN Solutions—a Texas LLC headquartered in New Braunfels, Texas—to develop and present the "Supply Chain Counterintelligence" breakout session. This contractual relationship with a Texas-based entity was not fortuitous; it was a deliberate, purposeful act that

created an ongoing partnership directed, in significant part, from Texas.

d. **Foreseeable Texas Audience.** The NCMS 62nd Annual National Training Seminar drew more than 1,700 attendees from across the nation, including, on information and belief, Texas-resident industrial security professionals who were members of NCMS and/or its DFW Chapter. NCMS knew or should have known that its defamatory publication would reach Texas residents, and the effects of the defamation were foreseeable in Texas.

**Venue**

14. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b). Defendant IXN resides in this district (New Braunfels, Texas, San Antonio Division). Defendant NCMS is deemed to reside in this district based on its claim-related contacts alleged above for personal jurisdiction. In addition, a substantial part of the events giving rise to the claims in this action occurred in this district as, on information and belief, the defamatory presentation was conceived, prepared, and coordinated from IXN's Texas offices within this district.

## FACTUAL BACKGROUND

### A. Broadcom's American Corporate Heritage and National Security Partnerships

15. Broadcom's semiconductor business traces its origins to a 1961 Hewlett-Packard division in Palo Alto. Its infrastructure software business incorporates companies with U.S. origins dating to 1960, 1976, 1981, 1982, 1991, and 1995. Its enterprise security business (the Symantec brand) was established in 1982 in Silicon Valley, California.

16. In 2005, Avago Technologies was formed when it spun out of Agilent Technologies (itself an HP spinoff) in a transaction led by Silver Lake Partners and Kohlberg Kravis Roberts & Co., alongside Singapore sovereign wealth funds. No Chinese entity held any ownership interest in Avago Technologies at formation or at any subsequent time.

17. In 2016, Avago Technologies acquired Broadcom Corporation and adopted the Broadcom name and brand. As noted above, Broadcom Inc. is today incorporated in Delaware, headquartered in Palo Alto, California, and publicly traded on NASDAQ under the ticker symbol AVGO.

18. In November 2017, Broadcom announced its intent to redomicile from Singapore to the United States in response to the Tax Cuts and Jobs Act—a decision announced before the Qualcomm bid that was later blocked by a March 12, 2018 Executive Order. The redomiciliation was not, as Defendants falsely stated, a CFIUS evasion scheme.

19. Broadcom's acquisition of VMware, Inc. received antitrust and competition clearance from twelve jurisdictions worldwide, including clearance from the United States Federal Trade Commission ("FTC"). The Defendants' characterization of this lawful acquisition as "DIB penetration" is false.

20. Broadcom maintains a cleared subsidiary, Broadcom Government Solutions LLC, whose cleared personnel support Department of Defense and Intelligence Community contracts. Broadcom is a founding alliance member of CISA's Joint Cyber Defense Collaborative. These facts are wholly inconsistent with Defendants' characterization of Broadcom as a foreign adversary.

**B. The NCMS 62nd Annual National Training Seminar**

21. During the week of June 8, 2026, NCMS held its 62nd Annual National Training Seminar in Atlanta, Georgia (the "Seminar"). The Seminar attracted more than 1,700 attendees from across the nation's government and industrial security communities.

22. The Seminar audience included representatives of the Defense Counterintelligence & Security Agency ("DCSA")—the agency that oversees Broadcom's facility clearance—the

National Security Agency ("NSA"), other Department of Defense components, and representatives of the Departments of Treasury, State, and Energy, and the Federal Reserve Bank.

23. NCMS selected and contracted with IXN to present a breakout session titled, "Supply Chain Counterintelligence: Protecting the DIB from Compromise." The session was offered twice during the Seminar. The accompanying slide deck was widely distributed to the approximately 1,700 attendees.

24. IXN representatives Jeremy Clark, Joe Sheridan, and Ryan Rambo presented the session both times it was offered.

**C. Defendants Broadcast a Defamatory Narrative During a Breakout Session**

25. During the breakout session, Defendants, acting jointly and in concert, made the following categories of false and defamatory statements about Broadcom:

26. **Category (a): Ownership Misrepresentation.** Defendants stated, among other things:

- "The company Avago is actually out of Singapore, and 54% of that company is Chinese owned."
- Avago "is backed by the Chinese, because they're 54% owned by them." "Avago purchases Broadcom Corporation," and "AVGO rebranded over as Broadcom. Kept the ticker [AVGO] the same, but now they had brand recognition and brand name."

27. The preceding statements are false. Avago Technologies was formed by Silver Lake Partners and KKR alongside Singapore sovereign wealth funds. No Chinese entity has ever owned any portion of Avago or Broadcom. The assertion that Broadcom is "54% Chinese owned" is a complete fabrication.

28. **Category (b): Foreign Company / DIB Penetration**. Defendants stated, among other things:

- "So now you have a foreign company, now called Broadcom, who they've now had

brand recognition as being a US company, when in fact they're not."

- Defendants' presentation included a slide titled, "Broadcom Acquisitions" and the heading: "VMware acquisition DIB penetration (November 2023)." Defendants characterized Broadcom's lawful acquisitions as "DIB penetration" and described Broadcom as a "foreign company" that obtained access, through VMware, to "a whole bunch of government contracts," and thus Broadcom "inserted themselves in [the U.S. government's] supply chain."

29. The preceding statements are false. Broadcom is a Delaware corporation headquartered in Palo Alto, California. The VMware acquisition received regulatory clearance from twelve jurisdictions, including the U.S. FTC. The characterization of lawful corporate activity as "DIB penetration" by a "foreign company" is defamatory and injurious to Broadcom's reputation and business relationships.

30. **Category (c): CFIUS Bypass.** Defendants stated, among other things, that Broadcom's 2017 redomiciliation to the United States was a deliberate "CFIUS Bypass." The same "Broadcom Acquisitions" slide included the heading: "Redomiciliation as CFIUS Bypass (2017—2018)." And Defendants described Broadcom's actions as "us[ing] our legal system against us."

31. The preceding statement is false. Broadcom announced its intent to redomicile in November 2017 in response to the Tax Cuts and Jobs Act—before the Qualcomm bid that was later blocked by Executive Order. The redomiciliation was a lawful corporate decision, not a CFIUS evasion scheme.

32. **Category (d): "The Adversary."** Defendants placed Broadcom in the context of Chinese espionage and counterintelligence, stating: "It's incumbent upon us to have good analysis to paint the picture to understand what the adversary is doing"—using "the adversary" to refer to China acting through Broadcom.

33. The preceding characterization is false and deeply injurious. Broadcom is an active partner of U.S. national security and cybersecurity agencies, maintains cleared facilities and

personnel supporting DoD/IC contracts, and is a founding member of CISA's JCDC. Calling Broadcom "the adversary" in the context of Chinese espionage is defamatory per se.

34. On information and belief, the false statements made by Defendants echo and amplify false claims that circulated during Broadcom's prior attempt to acquire Qualcomm Incorporated, which was reviewed and ultimately blocked by CFIUS and a March 12, 2018 Presidential Executive Order. At the time of Broadcom's attempted acquisition, many spread the false narrative that Broadcom was an agent of China and, as such, ultimately sought to suppress American 5G development and threaten national security. Broadcom expressly rebutted and disavowed those rumors, authoring an open letter to the U.S. Congress[1] promising to: (1) "mak[e] the United States the global leader in 5G; (2) invest $1.5 billion "to train and educate" U.S. engineers; and (3) "not sell any critical national security assets to any foreign companies." The letter also highlighted that "Broadcom is today in every important respect an American company," noting its strong ties to the United States, including: (1) that the company is led by an executive team made up of American citizens and its Board of Directors is "nearly all American citizens"; (2) that 90% of Broadcom's shareholders are American; (3) that more than half its workforce is located in the United States; and (4) making a commitment to invest $3 billion in research and engineering and $6 billion in U.S. manufacturing after it redomiciles.

35. Defendants' recycling of these debunked narratives demonstrates that Defendants acted with knowledge of the falsity of their claims or with reckless disregard for the truth.

**D. Broadcom Sends Defendants a Cease & Desist, Defendants Refuse to Retract Their Statements**

36. On July 20, 2026, Broadcom's counsel sent Defendants a cease-and-desist letter,

[1] "In Letter to Congress, Broadcom Pledges to Make the U.S. the Global Leader in 5G," March 9, 2018 (available at https://investors.broadcom.com/news-releases/news-release-details/letter-congress-broadcom-pledges-make-us-global-leader-5g-0).

which served as a formal retraction request under the Texas Defamation Mitigation Act, Tex. Civ. Prac. & Rem. Code §§ 73.051–73.062.

37. The letter identified the defamatory statements with specificity as required by § 73.055, demanded that Defendants (1) cease and desist from making the false statements; (2) issue a written retraction reaching the same audience, including the NCMS 62nd Annual Training Seminar attendees; (3) provide written confirmation of compliance within ten business days; and (4) implement a litigation hold on all documents, communications, recordings, slide decks, and materials related to the defamatory statements.

38. The letter expressly placed Defendants on notice that noncompliance would be treated as evidence of actual malice and reckless disregard for the truth.

39. On August 3, 2026, IXN, through counsel, sent a written response to Broadcom's July 20, 2026 letter declining all demands and stating that IXN "stands behind the accuracy of its presentation." NCMS was copied on IXN's response to Broadcom.

40. On September 8, 2026, NCMS, through counsel, sent a written response to Broadcom's July 20, 2026 letter. In its response, NCMS stated that it "neither prepares any of the presentations or materials presented at the conferences nor reviews or vets any of the presentations or materials prior to the conferences," that NCMS "has no control over the content of the presentations," and that NCMS "is not liable for any purported damages that Broadcom alleges." NCMS did not issue a retraction to the Seminar attendees. However, NCMS stated that, "as a courtesy to Broadcom," NCMS "has removed the IXN presentation from NCMS's website and mobile application, making it no longer publicly available."

## CAUSES OF ACTION

### COUNT ONE
**Defamation and Defamation Per Se**
**(Against All Defendants, Jointly and Severally)**

41. Broadcom realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

42. Defendants published false statements of fact concerning Broadcom to third parties—specifically, to more than 1,700 attendees at the NCMS 62nd Annual National Training Seminar, including representatives of DCSA, NSA, DoD, and other government agencies with whom Broadcom has or may conduct business.

43. The statements were defamatory. Defendants falsely stated that Broadcom is "54% Chinese owned," is a "foreign company" that "inserted [itself] in [the U.S. government's] supply chain," deliberately bypassed CFIUS through redomiciliation, and is "the adversary" in the context of Chinese espionage. Each statement was false and was understood by the audience in its defamatory sense.

44. The statements constitute defamation per se under Texas law because they adversely reflect on Broadcom's fitness to conduct its business and tend to injure Broadcom in its business, trade, and profession. *In re Lipsky*, 460 S.W.3d 579, 593, 596 (Tex. 2015). General damages are presumed. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017).

45. Defendants acted with actual malice and/or reckless disregard for the truth. The statements were fabrications—no Chinese entity has ever owned any portion of Broadcom or its predecessors. Defendants presented these falsehoods to an audience of national security professionals without conducting even minimal due diligence. Defendants' failure to retract after receiving the July 20, 2026 cease-and-desist letter, which identified the statements and their falsity with specificity, further evidences actual malice.

46. As a direct and proximate result of Defendants' defamation, Broadcom has suffered and continues to suffer damages, including but not limited to presumed general damages, harm to its reputation within the U.S. defense and national security communities, harm to its relationship with DCSA, harm to its government contracting relationships, and harm to its commercial relationships. Broadcom has suffered and continues to suffer special and economic damages in amounts to be proven at trial.

**<u>COUNT TWO</u>**
**Business Disparagement**
**(Against All Defendants, Jointly and Severally)**

47. Broadcom realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48. Defendants published false and disparaging statements about Broadcom's business, products, and corporate integrity to third parties, including government officials and defense industry professionals responsible for contracting with and overseeing Broadcom.

49. Defendants acted with malice and without privilege. The statements were fabrications published to an audience of government decision-makers for the purpose of damaging Broadcom's business relationships and economic interests.

50. As a direct and proximate result of Defendants' business disparagement, Broadcom has suffered special damages, including but not limited to harm to government contracting relationships, harm to its facility clearance relationship with DCSA, lost prospective contracts, and other economic harm in amounts to be proven at trial. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

**<u>COUNT THREE</u>**
**Tortious Interference with Existing Business Relations**
**(Against All Defendants)**

51. Broadcom realleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

52. Broadcom has existing contractual relationships with government agencies and commercial entities, including but not limited to contracts and relationships supported by Broadcom Government Solutions LLC and Broadcom's facility clearance with DCSA.

53. Defendants willfully and intentionally interfered with Broadcom's existing business relations by publishing false statements designed to undermine confidence in Broadcom among the very government officials and agencies responsible for awarding, managing, and overseeing those contracts and relationships.

54. Defendants' interference was the proximate cause of actual damage to Broadcom, including but not limited to jeopardized contracts, threatened clearance status, and disruption of existing business relationships, in amounts to be proven at trial.

**COUNT FOUR**
**Tortious Interference with Prospective Business Relations**
**(Against All Defendants)**

55. Broadcom realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Broadcom had a reasonable probability of entering into business relationships with government agencies and commercial entities, such as prospective defense and national security contracts in Broadcom Government Solutions LLC's pipeline.

57. Defendants engaged in independently tortious and unlawful conduct—namely, the defamation and business disparagement alleged herein—that interfered with Broadcom's prospective business relations. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001).

58. Defendants' tortious conduct was the proximate cause of actual damage to Broadcom, including but not limited to lost prospective government and commercial contracts, in amounts to be proven at trial.

**<u>COUNT FIVE</u>**
**Request for Temporary Injunction**
**(Against All Defendants)**

59. Broadcom realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Broadcom asks the Court to set its application for injunctive relief for evidentiary hearing on the issues in this application and, after the hearing, to issue a preliminary injunction against all Defendants, as outlined below, pending a final merits decision in this case.

61. Broadcom seeks a temporary injunction against Defendants to prevent Defendants from making further false statements regarding Broadcom and to protect Broadcom from immediate and irreparable harm. Specifically, a temporary injunction is necessary to prevent Defendants from continuing to falsely claim that Broadcom is a "Chinese company," is an "adversary" or an arm of an American "adversary," and that Broadcom's actions are a threat to national security (such as through "DIB penetration" and skirting governmental oversight just to enter into contracts with the United States government).

62. Broadcom will suffer imminent irreparable injury if Defendants are allowed to continue to make these types of statements while this matter is pending.

63. There is no adequate remedy at law for the harm Broadcom will suffer from Defendants' continued publication of these false statements. *See ITT Educational Svcs. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008); *see also Kroblin Refrigerated Xpress v. Pitterich*, 805 F.2d 96, 103 (3d 1986) ("When a court cannot arrive at a legal measure of damages with a sufficient degree of certainty, no adequate remedy at law exists." (citation omitted)); *Cytogenix, Inc. v. Waldorff*, 213 S.W.3d 479, 487 (Tex. App. 2006) ("An 'irreparable injury' is one for which actual damages will not adequately compensate the injured party or the damages cannot be measured by any certain pecuniary standard.").

64. There is a substantial likelihood that Broadcom will prevail on the merits.

65. The harm Broadcom would sustain if the temporary restraining order were not granted outweighs the harm faced by the Defendants. Because Broadcom's threatened injury is irreparable, Defendants must produce "powerful evidence of harm to its interests" to show that the balance of equities is in their favor, which they cannot do. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012). Issuance of a preliminary injunction in this private matter would not adversely affect the public interest.

66. Broadcom asks that it not be required to post a bond.

67. Broadcom asks the Court to set its application for a preliminary injunction at the earliest possible time after expedited discovery has been conducted and, after hearing the request, to issue the preliminary injunction against Defendants.

## JURY DEMAND

68. Plaintiff demands a trial by jury on all issues so triable.

## DAMAGES & PRAYER FOR RELIEF

WHEREFORE, Plaintiff Broadcom Inc. respectfully requests that this Court enter judgment against Defendants IXN Solutions LLC and NCMS, Inc., jointly and severally, and grant the following relief:

- Issue a temporary injunction enjoining Defendants as follows:

  (1) Ordering Defendants to refrain from making any false statements regarding Broadcom, including but not limited to false statements alleging or suggesting that:

    (a) Broadcom is a "Chinese company";

    (b) Broadcom is an "adversary" or an arm of an American "adversary";

    (c) Broadcom's actions are a threat to national security (such as through "DIB penetration" and skirting governmental oversight just to enter into contracts with the United States government);

(2) Ordering Defendants to cease further publishing, disseminating, or republishing all such prior statements; and

(3) Ordering Defendants to retract, remove, and correct all such false statements, including but not limited to any online, archived, or distributed materials, including specifically the slide deck distributed at the Seminar.

- Enter a permanent injunction enjoining Defendants as follows:

  (1) Ordering that Defendants refrain from making any false statements regarding Broadcom, including but not limited to statements alleging that: (a) Broadcom is a "Chinese company"; (b) Broadcom is an "adversary" or an arm of an American "adversary"; (c) that Broadcom's actions are a threat to national security (such as through "DIB penetration" and skirting governmental oversight just to enter into contracts with the United States government); (2) Ordering that Defendants cease further publishing, disseminating, or republishing such statements; and (3) Ordering that Defendants retract, remove, and correct all such false statements, including any online, archived, or distributed materials, including the slide deck distributed at the Seminar.

- Actual and presumed general damages in an amount to be determined at trial;
- Special and economic damages in an amount to be proven at trial;
- Exemplary and punitive damages in an amount to be determined at trial;
- Costs of court and reasonable attorneys' fees to the full extent permitted by law;
- Pre-judgment and post-judgment interest at the maximum rate allowed by law;
- Such other and further relief as the Court deems just and proper.

Dated: October 5, 2026

Respectfully Submitted,

*/s/ Scott C. Thomas*

Scott C. Thomas (Texas State Bar No. 24046964)
Carson D. Young (Texas State Bar No. 24106613)
LATHAM & WATKINS LLP
2501 North Harwood, Suite 1900
Dallas, TX 75201
Telephone: (713) 546-5400
Facsimile: (713) 546-5401
scott.thomas@lw.com
carson.young@lw.com

*Counsel for Plaintiff Broadcom Inc.*